FILED

2006 Nov-20  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| AMY SUMMERLIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 2:05-J-2392-S |
| VS. | ) | |
| | ) | |
| ALTON MARICE KIZZIAH, | ) | |
| ET. AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the court is the partial motion for summary judgment filed by the defendants, Alton Marice Kizziah ("Kizziah") and Associated Grocers of the South, Inc. ("Associated Grocers") (doc. 26). The motion was filed with a supporting brief (doc. 27) and evidentiary materials (doc. 27). Also pending before the court is plaintiff Amy Summerlin's motion for summary judgment as to liability (doc. 31), supporting brief (doc. 32), and evidentiary submissions (doc. 31), to which the defendants filed a brief in opposition (doc. 35). The court has carefully considered the motions, evidence, and arguments submitted by the parties in support of their respective positions.

## I. FACTUAL BACKGROUND

1

On November 26, 2003, Summerlin and her husband, Ronald Summerlin, were traveling south on Interstate 65 on their way to Greensboro, Florida when Summerlin was involved in a traffic accident with a tractor-trailer that was driven by Kizziah. Summerlin Dep. at 23, 38; Kizziah Decl. at ¶ 2.  The tractor-trailer driven by Kizziah was an 18-wheeler with a 48-foot trailer unit.  Kizziah Interrog. Resp. #7.  Kizziah was an employee of Associated Grocers, and it is undisputed that he was acting within the scope of his employment with Associated Grocers at the time of the accident.  Kizziah Decl. at ¶ 1; Associated Grocers Interrog. Resp. #3.  The accident occurred in Calera, Alabama and the weather was clear and dry at the time of the accident.  Summerlin Dep. at 37-38, 39.

When the accident occurred, Summerlin was driving and her husband was seated in the front passenger's seat.  Summerlin Dep. at 26-27.  Interstate 65 is a four-lane highway divided by a median.  Summerlin Aff. at ¶ 4.  Summerlin was driving in the left lane of south-bound traffic and Kizziah was driving in the right lane of south-bound traffic.  Summerlin Dep. at 39; Summerlin Aff. at ¶ 4.  Before the accident, vehicles were located in front of, in back of, and to the right of Summerlin's vehicle and she was approaching a bridge.  Summerlin Dep. at 39-40.  Kizziah maneuvered his tractor-trailer from the right lane to the left lane of traffic and the tractor-trailer collided with Summerlin's vehicle.  Summerlin Dep. at 40, Ronald

2

Summerlin Dep. at 14.  The initial impact between Summerlin's vehicle and the tractor-trailer occurred just before the vehicles reached the bridge.  Ronald Summerlin Dep. at 41.  The left rear tire of the tractor-trailer collided with the passenger-side door of Summerlin's vehicle and knocked the side-view mirror off of Summerlin's vehicle.  Ronald Summerlin Dep. at 11; Summerlin Aff.  at ¶ 5.  In addition, the edge of the trailer came over the lip of the door and shattered the passenger-side window causing glass to come into the vehicle.  Ronald Summerlin Dep. at 11; Summerlin Dep. at 41-42.  Summerlin testified during her deposition that Kizziah "changed lanes on top of me without looking to see if there was anyone behind him."  Summerlin Dep. at 39.  Summerlin's vehicle became sandwiched between the guardrail on the bridge and the tractor-trailer.  Summerlin Dep. at 40-41. Summerlin's vehicle went "back and forth" between hitting the guardrail on the bridge and hitting the tractor-trailer.  Summerlin Dep. at 41.  Summerlin stated that she was knocked "back and forth" between the tractor-trailer and the guardrail for the entire length of the bridge.  Summerlin Dep. at 41-42.  The left front and rear tires of Summerlin's vehicle struck the curb of the bridge causing the tires to flatten.  Ronald Summerlin Dep. at 12.  After Summerlin crossed the bridge, she pulled over into the median.  Ronald Summerlin Dep. at 16.

Summerlin did not see the tractor-trailer before the accident occurred.

Summerlin Dep. at 47-48, 70.  The first time Summerlin saw the tractor-trailer was when it made contact with her vehicle.  Summerlin Dep. at 48.  Ronald Summerlin first saw the tractor-trailer when it began maneuvering from the right to the left lane. Ronald Summerlin Dep. at 13.  Summerlin does not remember if Kizziah had turned on his left turn signal before he changed lanes, but she testified that it is possible that Kizziah turned on his turn signal.  Summerlin Dep. at 48.  Kizziah stated in a declaration that he engaged his left turn signal before changing lanes, and he stated in his interrogatory responses that he checked his rearview and sideview mirrors before changing lanes.  Kizziah Decl. at ¶ 3; Kizziah Interrog. Resp. #8.  Kizziah stated that "it was clear to change lanes."  Kizziah Interrog. Resp. #8.  Summerlin does not remember seeing Kizziah's sideview mirror at the time of the accident. Summerlin Dep. at 73.  Summerlin stated that she does not know how fast she or Kizziah were driving at the time of the accident.  Summerlin Dep. at 71-72.

After the collision, Kizziah continued driving in the left south-bound lane and he left the scene of the accident.  Summerlin Dep. at 111; Ronald Summerlin Dep. at 15-16.  Summerlin claims that Kizziah knowingly fled the scene of the accident. Summerlin Dep. at 111.  When asked at her deposition what evidence she had to support the allegation that Kizziah knowingly fled the scene of the accident, Summerlin testified to the following:

4

> "I -- well, I believe he knew of coming over on us -- on us, hitting us.
> I mean, I just -- I can't believe that he did not know that he came over
> on us just because how the traffic was in front of me, the traffic behind
> me, and all the -- I believe he knew that he come over on us and stayed
> on us that whole time."

Summerlin Dep. at 111. In her interrogatory responses, when asked what evidence
she had to support her wantonness claim, Summerlin provided the following
response:

> "Defendant Kizziah was not paying attention to other motorists (myself,
> in particular) that were using the roadways on November 26, 2003. He
> changed lanes on top of me without looking to see if there was anyone
> behind him. As a result of his reckless behavior, he sandwiched my
> vehicle between his truck and the guardrail of the bridge that we were
> crossing. I was fearful that I was going to go over the side of the bridge.
> He continued driving in this manner the entire length of the bridge."

Summerlin Interrog. Resp. #30. Kizziah stated that he was not aware that he had been
involved in a traffic accident until he was flagged down by an unidentified driver.
Kizziah Decl. at ¶ 6; Heathcock Decl. at ¶ 3. He also stated that he did not knowingly
leave the scene of the accident. Kizziah Decl. at ¶¶ 4-5. After he was flagged down,
Kizziah stopped the tractor-trailer until the police arrived at his location. Kizziah
Interrog. Resp. #8. Kizziah states that he told police that "it was clear when [he]
changed lanes" and that he did not know that he had hit a car. Kizziah Interrog. Resp.
#8. The police did not arrest Kizziah or cite him for any traffic violations. Kizziah
Decl. at ¶ 6; Kizziah Interrog. Resp.s #8 and #13. The police officer that investigated

the accident stated that he "did not find any evidence to suggest that the tractor-trailer driver intentionally fled the accident scene or otherwise intended to evade police officers." Heathcock Decl. at ¶ 4.

After the accident, police and emergency medical technicians (EMTs) arrived at the scene of the accident. Summerlin Dep. at 57. Summerlin did not receive any medical treatment from the EMTs that arrived at the scene of the accident. Summerlin Dep. at 57. When the ambulance arrived, Summerlin did not have any injuries. Summerlin Dep. at 57. Summerlin's vehicle was towed from the scene and she and her husband rented a car to continue their drive to Florida. Summerlin Dep. at 57-58, 61. While traveling to Florida, Summerlin reached into her purse and punctured her thumb on a piece of glass that was in her purse. Summerlin Dep. at 62-63. Summerlin testified that, because of the injury, she can no longer bend her thumb and that she will have to undergo two surgeries to treat the injuries to her thumb. Summerlin Dep. at 78-79; Summerlin Interrog. Resp. at #7. In addition to the injury to her thumb, Summerlin also states that, as a result of the accident, she suffered the following injuries: emotional distress and trauma; bodily injuries to her neck, back, left shoulder, and left arm; and headaches. Compl. ¶ 9; Summerlin Interrog. Resp. at #7.

On November 23, 2005, Summerlin sued Kizziah and Associated Grocers

alleging that Kizziah negligently and wantonly operated his vehicle thereby causing the accident.  Compl. at ¶¶ 7, 10.  The claims asserted against Associated Grocers are based upon a theory of respondeat superior liability.  Compl. at ¶ 8.  This court has diversity jurisdiction under 28 U.S.C. §1332.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(e)).  In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a genuine issue for trial.  *See*  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## III. DISCUSSION

### A. Defendants' Partial Motion for Summary Judgment

The defendants argue that summary judgment is due to be granted in their favor on the plaintiff's wantonness claim (doc. 27).  The plaintiff has failed to respond to said motion.

"What constitutes wanton misconduct depends on the facts presented in each particular case."   *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996).

"[W]antonness, which requires some degree of culpability, is not to be confused with negligence (i.e. mere inadvertence)[.]" *George v. Champion Ins. Co.*, 591 So. 2d 852, 854 (Ala. 1991). Negligence and wantonness are different tort concepts. *George*, 591 So. 2d at 854. An act or omission that is done with knowledge of danger or with consciousness that the action or omission will likely result in an injury constitutes wanton conduct. *S. Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795, 797 (Ala. 1990). Negligence, on the other hand, is characterized by inattention, thoughtlessness, heedlessness, or a lack of due care. *Branum*, 568 So. 2d at 797.

In *Branum*, a driver struck a pedestrian with the van he was driving. *Branum*, 568 So. 2d at 795. The pedestrian was crossing the street when she was hit by the van. *Id.* The driver's attention had been diverted by another vehicle in an adjacent lane that was encroaching on his lane. *Id.* at 798. After the driver "drifted to the right" to avoid hitting the encroaching vehicle, the driver of the van looked up and saw the pedestrian for the first time. *Id.* The driver testified that he immediately applied his brakes but he could not avoid hitting her. *Id.* The driver admitted that pedestrians commonly crossed the street in the area. *Id.* at 797. The pedestrian sued the driver of the van alleging both negligence and wantonness and a jury returned a verdict in favor of the plaintiff. *Id.* at 795. The driver appealed arguing, among other things, that the trial court erred in submitting the wantonness claim to the jury. *Id.*

at 796.  The pedestrian argued that the driver's failure to watch where he was driving when he had knowledge that pedestrians commonly crossed the street in the area constituted wanton conduct.  *Id.* at 797-798.  However, the court held that, under the facts of the case, there was insufficient evidence to support a finding that the driver's actions were wanton.  *Id.* at 796, 798.

In *George*, a passenger in a vehicle sued claiming wantonness when the driver of the vehicle ran a red light and collided with another vehicle.  *George*, 591 So. 2d at 853.  The occupants of the car were engaged in conversation, and the driver looked at the traffic light that they were approaching and the light was green.  *Id.* at 854.  The driver then "glanced back in conversation" and when she looked back up, the light was red.  *Id.*  The driver testified that she tried to apply the brakes, but she missed the brake and hit the clutch instead.  *Id.*  The driver ran the red light and collided with another vehicle.  *Id.*  The Supreme Court of Alabama stated that "[w]hile the facts show inadvertence on the part of the driver, they do not amount to wantonness, which requires some degree of conscious culpability."  *Id.*  Therefore, the court held that the facts of the case, when viewed in a light most favorable to the plaintiff, do not amount to substantial evidence of wantonness on the part of the driver.  *Id.*

In *Anderson*, the passenger in a vehicle sued alleging injuries resulting from a collision that occurred when the driver of the vehicle turned into oncoming traffic.

10

*Anderson*, 682 So. 2d at 468-469.  At the time of the accident, it was raining and the roads were wet.  *Id.* at 469.  The driver was attempting to turn left when she crossed in front of oncoming traffic.  *Id.* at 469.  The evidence demonstrated that the driver could not see if any traffic was approaching as she turned because her vision was partially blocked by another vehicle.  *Id.*  The driver stated in an affidavit that she believed it was safe to turn.  *Id.* at 470.  The court held that there was no evidence that the driver acted in a wanton manner.  *Id.*  Further, the court held that "[a]lthough [the driver] may have been negligent in turning left while her view of the oncoming traffic was blocked, we do not believe that this evidence is sufficient to prove that she was guilty of 'wanton conduct,' as that term is defined in our cases."  *Id.*

The plaintiff claims that the defendant Kizziah "negligently operat[ed] a vehicle under his control in a generally reckless, wanton, willful, unlawful and grossly negligent manner."  Compl. at ¶ 7.  The defendants argue that, under *Branum*, *George*, and *Anderson*, the facts of this case do not support a claim of wantonness. The defendants presented evidence demonstrating that, like the driver in *Anderson* who believed it was safe to make the left hand turn, Kizziah believed that the left lane was clear before he changed lanes.  Further, the defendants presented evidence that Kizziah turned on his left turn signal before changing lanes.  In addition, the defendants presented evidence demonstrating that, like the driver in *Anderson* that did

not see the oncoming traffic, Kizziah did not see the plaintiff's vehicle before changing lanes. Further, unlike the drivers in *Branum* and *George*, who were distracted when driving, the evidence presented by the defendants demonstrates that Kizziah was not distracted while driving his tractor-trailer and that he believed it was clear before he changed lanes. Therefore, the evidence submitted by the defendants demonstrates that Kizziah's behavior was less egregious than that of the drivers in both *Branum* and *George* where the court found insufficient evidence to support a claim for wantonness. Thus, the court finds that the defendants have met their burden of establishing that, under the relevant case law, there is no genuine issue of material fact as to whether Kizziah acted with conscious culpability or wantonness when changing lanes.

The plaintiff also claims that Kizziah willfully and wantonly disregarded the her safety and well-being by leaving the scene of the accident. Compl. at ¶ 10. The evidence demonstrates that Kizziah did not knowingly leave the scene of the accident. Kizziah stated in an affidavit that he was unaware that he had collided with the plaintiff's vehicle and that it was only when he was flagged down by another driver that he realized he was involved in a collision. Kizziah further stated that he did not knowingly leave the scene of the accident. The police officer that questioned Kizziah stated in an affidavit that he did not find any evidence to suggest that Kizziah

12

knowingly left the scene of the accident. Further, the plaintiff's statement that she "can't believe" that Kizziah did not know that he had collided with her vehicle is insufficient to create a genuine issue of material fact as to whether Kizziah knowingly left the scene of the accident.

The plaintiff failed to file a response in opposition to the defendants' motion. Because the court finds that there is no genuine issue of material fact whether Kizziah acted wantonly in driving his tractor-trailer, summary judgment is due to be granted in favor of Kizziah.  In addition, because the court finds that summary judgment is due to be granted in favor of Kizziah on the plaintiff's claim that Kizziah wantonly operated his tractor-trailer, the court finds that summary judgment is also due to be granted in favor of Associated Grocers on this claim.  *See Univ. of Alabama Health Servs. Found., P.C. v. Bush*, 638 So. 2d 794, 799 (Ala. 1994) ("Under the doctrine of respondeat superior, the master cannot be liable unless one of the master's servants has been found to be negligent.").  Therefore, the defendants' motion for partial summary judgment is due to be **GRANTED**.

### B. Plaintiff's Motion for Summary Judgment as to Liability

The plaintiff argues that summary judgment is due to be granted in her favor as to liability.  Having considered the plaintiff's arguments as well as the defendants' response in opposition to the motion, the court finds that genuine issues of material

fact exist as to liability.  Therefore, the plaintiff's motion is due to be **DENIED**.

## CONCLUSION

Having considered the foregoing, the court finds that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial against the defendants on the plaintiff's wantonness claim.  It is therefore **ORDERED** that summary judgment shall be **GRANTED** in favor of these defendants on the plaintiff's wantonness claim.

The court also finds that genuine issues of material fact exist as to liability.  It is therefore, **ORDERED** that the plaintiff's motion for summary judgment as to liability shall be **DENIED**.

**DONE** and **ORDERED** this the 20th day of November, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE